CENTRAL RY. SIGNAL CO. v. METALLIC SHELL & TUBE CO.

(District Court, D. Rhode Island.   December 14, 1915.)

No. 31.

1. PATENTS ☞328—VALIDITY AND INFRINGEMENT—TRACK—TORPEDO.
   The Jackson patent, No. 824,019, for a track torpedo, claims 2 and 3, *held* void for lack of invention; also *held* not infringed.

2. PATENTS ☞328—VALIDITY AND INFRINGEMENT—RAILWAY TORPEDO.
   The Beckwith reissue patent, No. 12,396 (original No. 790,879), for railway torpedo, claims 2, 8, and 9, *held* not infringed.

In Equity.   Suit by the Central Railway Signal Company against the Metallic Shell & Tube Company.   On final hearing.   Decree for defendant.

James H. Thurston, of Providence, R. I., for complainant.
Horatio E. Bellows, of Providence, R. I., for respondent.

BROWN, District Judge.   The bill charges infringement of letters patent to W. D. Jackson, No. 824,019, June 19, 1906, on application filed December 26, 1903, for track torpedo, and letters patent to C. E. Beckwith, No. 123,396, reissue November 7, 1905, on application of May 30, 1905, for reissue September 13, 1905, for railway torpedo.

Both patents relate to torpedoes used for railway signaling purposes. The prior patented art discloses a number of such devices:

| | | |
|---|---|---|
| Hickman | 160,431 | 1875. |
| Hickman | 173,291 | 1876. |
| Bevington | 375,254 | 1887. |
| W. C. Beckwith | 409,902 | 1889. |
| E. G. Beckwith | 501,399 | 1893. |
| Bevington & Fisher | 608,020 | 1898. |
| Dutcher | 610,672 | 1898. |
| Broe | 647,938 | 1900. |

A track torpedo comprises, first, a torpedo; second, means for attaching the torpedo to the rail.   The torpedo proper consists of detonating material in a suitable shell or container.   Metal was sometimes used for the shell; but, in order to avoid danger from flying bits of hard metal, other material was commonly used.

The torpedo is secured to the rail by some means which must engage both the torpedo and the rail.   Soft or flexible metal strips or securing straps, which can be bent readily over opposite sides of the head of the rail, were the ordinary means for engaging the rail.   Leaden strips were commonly used.   The prior patent to Beckwith, 501,399, speaks of "the ordinary soft metal securing strip."

As shown by the prior art, these strips were attached to the torpedo in various ways.   In Hickman, 160,431, they are made integral with the container or shell of the torpedo; the container and straps being struck up from a single piece of soft or ductile sheet metal.   It is obvious, of course, that when the straps and shell of the torpedo are made

of the same material and in a single piece they require no attachment other than that which results from continuity of the material. When, however, the strap and the torpedo shell are made in separate pieces and of different materials, it is necessary to attach the strap or straps to the torpedo, in order that the torpedo may be connected with the rail. This attachment is made by passing the strap over the top of the container, Hickman, 173,291; Broe, 647,938; by soldering, Bevington, 375,854; by the use of tacks, Beckwith, 501,399; by passing the strap between inner and outer layers of the shell and through slots in the outer layer of the shell, Dutcher, 610,672.

[1] The claims of the Jackson patent now in suit are 2 and 3:

"2. As a new article of manufacture, a track torpedo comprising a casing of paper having a filling of detonating material exploding under pressure, means for securing said torpedo to the head of a rail, and means encircling the body of said torpedo for retaining said securing means thereto.

"3. As a new article of manufacture, a track torpedo of tubular shape, having a filling of detonating material exploding under pressure, means for securing it to the head of a rail, and means encircling the body of the torpedo for retaining said securing means thereto."

Because Jackson makes his securing strap and his torpedo shell of different materials and in separate parts, he is compelled to furnish means for uniting them, in order to secure a connection between the track and the torpedo.

The defendant's device resembles that of Hickman, in that the straps and the shell of the torpedo are made integral, of the same material. The defendant places the explosive material in a paper envelope, which is folded up and placed within a tube of thin lead foil. The lead foil is pinched in on either side of its central portion to form the shell of the torpedo, while the end portions of the tube are folded up to form leaden strips of sufficient thickness and consistency to serve as straps for connection to the rail.

It is obvious that this track torpedo is of a very different type from the track torpedoes of the patents in suit, for the reason that the problem, if there be any problem, of attaching the straps to the shell, is solved by making all in a single piece. In this respect the defendant's device is of the Hickman type.

The means provided by Jackson for connecting his securing strap to the torpedo body was of the simplest and most obvious character. He uses the ordinary leaden strap, places it lengthwise of a tubular torpedo body, and unites the torpedo and strap by slipping over both an open-ended tube, or, as an alternative, tubular bands. The claims are drawn broadly to include—

"means encircling the body of said torpedo for retaining said securing means thereto."

By "securing means" he means simply a strip of lead which, properly speaking, is not in itself a securing means, for alone it has no provision for attachment to the torpedo. The Jackson invention is fully represented by passing a pair of rubber bands over the torpedo case and the lead strip, and thus holding them together, or it would be fully represented by tying the leaden strip to the tube by two pieces

of tape. Such devices are within the claims, and would infringe them if they are valid.

Nor can the claims be saved by limiting the encircling means to a complete tube; for they are specifically drawn to cover bands, as well as the tube, as appears by the specification. It is apparent that neither the bands, which leave exposed, not only the ends, but a portion of the side, of the torpedo shell, nor the tube which covers the sides, but not the ends, of the torpedo, can be considered as the shell of the torpedo, since neither form confines the explosive. In complainant's brief the tube or bands which retain the lead strip to the body of the torpedo are referred to as an "inclosing case." This is inaccurate.

It is then argued that the use of an inner case or explosive container in combination with an outer case is of marked utility, in that it enables the explosive charge to be practically measured in the inner receptacle, and when so measured in the inner receptacle to be readily placed within the encircling tube or member. It is argued that each of the patents of the prior art shows only a single case, and does not show a container in which the explosive is measured and placed, and this container placed within an outer tube or encircling means or member, as disclosed in the Jackson patent and in the defendant's torpedo. This is entirely an expert importation into the case, and has nothing to do with the patent in suit, which neither shows nor claims two complete cases for the explosive.

The complainant fallaciously attempts to find in the defendant's device the three elements of the Jackson patent. It first contends that an ordinary paper envelope containing the explosive charge, which is folded up and placed within the leaden tube, constitutes the defendant's torpedo. This is erroneous. The torpedo of the defendant consists, not only of the explosive charge in a paper envelope, but of the protecting shell of lead foil which completely incloses the paper envelope and explosive. The paper envelope of the defendant is not the shell of its torpedo, in the sense that Jackson's casing of paper, against which he puts the leaden strip, and about which he puts an open-ended tube or bands, is the casing of his torpedo.

Complainant next finds in the continuity of the defendant's shell and its straps an equivalent for the means of uniting the separate parts; but in this contention there is no merit.

It seems clear that the Jackson patent does not describe a patentable invention, unless it be said that it is a patentable invention to tie his leaden strip to his torpedo by two bands of tape. It also seems clear that there is no substantial resemblance between Jackson's track torpedo and the defendant's in any particular that was new with Jackson.

I find the claims of the Jackson patent in suit invalid. I find, also, that they are not infringed by the defendant's structure.

[2] The Beckwith patent in suit also relates to that type of torpedo in which the container or shell for the explosive and the straps to attach it to the rail are made of separate pieces and separate material, and therefore are required to be united by some separate means. Like Jackson, Beckwith has a problem which does not arise in devices of the Hickman type, to which the defendant's device corresponds in

having the container and straps made of the same material and of one piece.

It is a curious inversion of things, when the prior art discloses the making of shell and straps in one piece, for the complainant now to contend that complainant's means of uniting two different pieces together is infringed by a one-piece structure, wherein there was never any problem of devising means for uniting separate parts.

Beckwith uses the flexible metallic strip in conjunction with a metallic part called a "carrier," which engages the ends of the torpedo, though it does not fully encircle the torpedo. The claims of the Beckwith patent in suit are 2, 8, and 9.

The claims of this patent, if valid at all, have no application to a structure like the defendant's, which involves no problem of uniting a separate case to a separate leaden strip. It is doubtful if any feature of novelty appears in the Beckwith patent, except the clamping action of the ends of his carrier, so called, upon the ends of a tube, in order to hold them closed. Nothing corresponding to this is found in the defendant's device.

The argument that the closing down or twisting of portions of defendant's tube corresponds to the clamping action of the Beckwith device, whereby the carrier closes the turned-over ends of his tubular envelope, is far-fetched and unsound. In fact, it seems to me that the complainant's argument in this case is extremely sophistical, and is an attempt, through language and misleading abstractions, to prove the similarity of things which, from a practical point of view, are substantially different. The defendant's device seems to be a structure of entirely independent character, which borrows absolutely nothing from either Jackson or Beckwith. Though the idea that the inclosing case and the straps might be made of the same material, and integral, was not novel, the use of a tube of lead foil which should form a suitable non-flying shell for a torpedo, and which also, by manipulation of its ends, would afford suitable leaden strips for attachment to the track, seems a distinct invention for meeting the requirements of a track torpedo—that its shell shall be sufficient to protect the explosive, that it shall not be dangerous by reason of the flying of its material, and that it shall be readily attachable to the rail. Nothing disclosed in either the Jackson or Beckwith patents affords a reasonable justification for the charge of infringement.

The bill will be dismissed.

A draft decree may be presented accordingly.